# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF ARKANSAS



FILED
U. S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

FEB **2 0** 2019

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

UNITED STATES OF AMERICA, EX
REL, (UNDER SEAL),

Civil Action No: _4:19 - cv - 132 - KGB_

        Plaintiff,        **COMPLAINT**

        V.

(UNDER SEAL),

This case assigned to District Judge _Baker_
and to Magistrate Judge _Deere_

        Defendant

## FILED IN CAMERA AND UNDER SEAL
## PURSUANT TO 31 U.S.C. SECTION 3730(b)(2)

## DO NOT ENTER IN PACER





FILED
U. S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

FEB 2 0 2019

JAMES W. McCORMACK, CLERK
By:_____
                              DEP CLERK

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF ARKANSAS

UNITED STATES OF AMERICA, EX
REL, JERRY DODD,

Civil Action No: 4:19-cv-132-KGB

                                    Plaintiff,

**COMPLAINT FOR VIOLATION OF
FALSE CLAIMS ACT, 31 U.S.C. 3729
ET SEQ, AND DEMAND FOR JURY
TRIAL**

**V.**

BEI PRECISION SYSTEMS & SPACE
COMPANY INC. and J.F. Lehman & Company

**Filed in Camera and under Seal
PURSUANT TO 31 USC 3730 (b) (2)**

                                    Defendants

**DO NOT ENTER IN PACER**

**COMPLAINT**    This case assigned to District Judge Baker
and to Magistrate Judge Deere

Plaintiff, Jerry Dodd, on behalf of the United States of America, for his complaint against defendants BEI

PRECISION SYSTEMS & SPACE COMPANY INC. (BEI PSSC Inc.) and J.F. Lehman & Company alleges, based

upon personal knowledge and relevant documents, as follows:

**A.**      **INTRODUCTION** (all subparagraphs number consecutively, 1, 2, 3 ignoring Alpha headings)

1. This an action to recover damages and civil penalties on behalf of the United States of

America arising from false and/or fraudulent records, statements and claims made, used, presented,

and caused to be made, used or presented by Defendants and/or their agents, employees and co-

conspirators, in violation of the Federal Civil False Claims Act, 31 U.S.C. section 3729 et seq. ("the FCA").

2. Defendants' conduct described herein violates the FCA. The FCA was originally enacted during The Civil War and was substantially amended in 1986. Congress amended the statute to enhance the federal government's ability to recover losses sustained as a result of fraud against the United States after finding that fraud in federal programs was pervasive, and that the statute, which Congress characterized as the primary tool for combating government fraud, was in need of modernization.

**B. Defendant's Confidential Waiver and Release Prohibits Whistle-Blowing Claims**

3. Defendant's **Confidential Waiver and Release of Claims Agreement** was provided to Plaintiff on 1/31/2019. Attachment A. Recitals contain "general release of any and all claims as set forth herein." Releases includes two references to "claims for whistle-blowing" under paragraph 8. Complete Settlement on page 3 of 12. Also, on page 4, paragraph 10. Complete Release (a), "claims for whistle-blowing." See Attachment 1, Defendant's **Confidential Waiver and Release of Claims Agreement** between Jerry L. Dodd and BEI Precision Systems and Space Company, Inc., 12 pages with reference date of January 31, 2019 on page 8 of 12; not signed.

4. Only exception to bringing/asserting claims is "charge of discrimination, to participate in a proceeding with any appropriate federal or state government agency enforcing discrimination laws, or to cooperate with any such agency in its investigation,…"

5. Subparagraph (d) requires giving up all claims to include whistle-blowing claims. There is not an exception similar to discrimination. On page 5, paragraph 10. Complete Release "(d) Dodd acknowledges that he is, through this Agreement, releasing BEI and the Released Parties (or any of them) from any and all claims he may have based on any event, occurrence or claim which was raised or could be raised prior to the effective date of this agreement;"

6. The clauses are direct violation of public policy to encourage whistle-blowing for fraud detection especially under the 1986 amendments to FALSE CLAIMS ACT, 31 U.S.C. 3729.

7. **Prohibition on Requiring Certain Internal Confidentiality Agreements or Statements (Jan 2017) FAR 52.203-19** (b) The Contractor shall not require its employees or subcontractors to sign or comply with internal confidentiality agreements or statements prohibiting or otherwise restricting such employees or subcontractors from lawfully reporting waste, fraud, or abuse related to the performance of a Government contract to a designated investigative or law enforcement representative of a Federal department or agency authorized to receive such information (e.g., agency Office of the Inspector General). The above Federal Acquisition Regulation is based on statute: PUBLIC LAW 113–235—DEC. 16, 2014 128 STAT. 2391

SEC. 743. (a) None of the funds appropriated or otherwise made available by this or any other Act may be available for a contract, grant, or cooperative agreement with an entity that requires employees or contractors of such entity seeking to report fraud, waste, or abuse to sign internal confidentiality agreements or statements prohibiting or otherwise restricting such employees or contactors from lawfully reporting such waste, fraud, or abuse to a designated investigative or law enforcement representative of a Federal department or agency authorized to receive such information.

8. On Feb 13, 2018, Matthew Jones, attested to accuracy of the statement on page 16 of 54 that BEI was complying with: (a)The Contractor shall comply with the following Federal Acquisition Regulation (FAR) clauses, which are incorporated in this contract by reference, to implement provisions of law or Executive orders applicable to acquisitions of commercial items:(1) 52.203-19, Prohibition on Requiring Certain Internal Confidentiality Agreements or Statements (Jan 2017) (section 743of Division E, Title VII, of the Consolidated and Further Continuing Appropriations Act, 2015 (Pub. L. 113-235) and its successor provisions in subsequent appropriations acts (and as extended in continuing resolutions)). This statement and paragraph 9 statement are part of US Government SAM, System of Award Management. SAM certifications are used by DOD contracting to make contract awards with resulting invoices for shipment of products.

9. On Feb 5, 2019, Matthew Jones (Controller Functional), attested to accuracy of the statement on page 16 of 53 that BEI was complying with: (a)The Contractor shall comply with the following Federal Acquisition Regulation (FAR) clauses, which are incorporated in this contract by reference, to implement provisions of law or Executive orders applicable to acquisitions of commercial items:(1) 52.203-19, Prohibition on Requiring Certain Internal Confidentiality Agreements or Statements (Jan 2017) (section 743of Division E, Title VII, of the Consolidated and Further Continuing Appropriations Act, 2015 (Pub. L. 113-235) and its successor provisions in subsequent appropriations acts (and as extended in continuing resolutions). Matthew Jones (Controller Functional), was a location compliance official for major defense contractor General Dynamics (GD) at Highland Industrial Park, East Camden, Arkansas for Department of Defense Hydro70 product for number of years in 2000's before starting work for BEI PSSC over 10 years ago. Matthew Jones was trained and was the location compliance official by corporation GD compliance department. Matthew Jones being prior compliance official was verbal disclosure to Plaintiff. On one occasion, Matthew Jones found  the attorney on internet who was head of the GD compliance program.

10.  From high of 260+ employees in 2012 to 2016, to 143 after 1/31/2019 terminations, reasonable estimate of 100-/+ **Confidential Waiver and Release of Claims Agreement , "Release" here in after,** have been signed by former employees.  Each agreement is FCA claims in its self. Based on series of terminations since 2015 (after Public Law 113-235, dated Dec. 16, 2014) or 2016, using maximum claims penalty of $21,563 times 80= $1,725,040. Twenty claims are estimated before 11/2/2015: 20 times $11,000= $220,000. Additionally, the two certifications in paragraphs 8 and 9 have been used for numerous DOD contract awards since 2/13/2018 and 1 or more of 12 1/31/2019. Each DOD contract award since 2/13/2018 and resulting invoices are based the false certifications. The complete agreements should declare null and void for exogenous, abusive and continuing violations of Public Law 113-235, dated Dec. 16, 2014 and successor appropriations acts.

COMPLAINT

11. Garry Rowe, Director Human Resources, direct report of President and CEO, would not respond or offer to remove waiving of whistle blowing rights before Plaintiff was dismissed and escorted from the BIE PSSC Inc. on January 31, 2019.  Plaintiff asked Mr. Garry Rowe as the BEI PSSC Inc. Whistleblower Protection Policy main reporting person if he had the "Release" reviewed by government contracts attorney experienced in human resources to determine if the "Release" met whistle blowing statute requirements. Mr. Garry Rowe refused to reply. Ms. Kristin Gawlik replied that company attorneys had vetted the "Release." This no reply should be considered retaliation.

12. Which attorney experienced in whistle blowing statute would vet this "Release?" Only an attorney who was not aware of the Public Law 113-235, dated Dec. 16, 2014. That attorney and law firm should be held accountable for the vetting that missed the impact of Public Law 113-235, dated Dec. 16, 2014. This establishes a pattern and long standing process to silence whistle blowers by BEI PSSC Inc. since the agreement was first used.

13. Defendant's **Confidential Waiver and Release of Claims Agreement** was reported to David Rattner, Chief Compliance Officer, J.F. Lehman & Company, Managing Director, Legal, Administration and Compliance per May 30, 2013 press release.  Plaintiff's 1/31/2018 12:11 PM call was whistleblowing complaint. See attached Plaintiff's confirming email of February 1, 2018 and David L. Ratttner, DLR@jflpartners.com, 212-634-1178, reply of "we are reviewing and will get back to you." Attachment B. No reply from David L. Rattner as of date of filing this complaint.

14. Defendants Human Resources Director, Garry Rowe, did not change the Employee handbook in 2015, 2016, 2017 or 2018 to Inform Employees of Whistleblower Rights under DFARS Contract Clause 252.203-7002.  The employee handbook was the same from 2007. Plaintiff informed by email 1/26/2015 that Garry Rowe should add to employee handbook without response from Garry and not change in employee handbook until 2019. All invoices from DOD Contracts should be subject to False Claims Act along with analysis of all invoices for penalties applicable from time frame of 2015 to 2018. A review of DOD contract awards would be reasonable estimate until actual records of the Defendant are reviewed.

Generally, there would be one invoice per month. Also, only 2 to 6 invoices (estimated total price of $100,000) on annual basis were federal funded as direct contract or subcontractor.

**C. Federal Acquisition Regulation (FAR) 52.203-13 required Contractor Code of Business Ethics and Conduct**.

15. Department of Defense contracts over $5,500,000 after (Oct 2015) or $5,000,000 before (Oct 2015) per FAR 52.203-13 requires Contractor Code of Business Ethics and Conduct. Plaintiff's email (dated 5/29/2014) is comparison by subclause to Defendents business ethics in its 2007 Employee Handbook.

16. Lockheed Martin Corporation, Lockheed Martin Space Systems Company had 3 covered subcontracts over $5,500,000 for Space Based Infrared Systems (SBIRS) with a required flow down of FAR 52.203-13:

a. Contract No. 8100001596 with performance to 2014 with BEI PSSC number of 1908 and 1924. Generally, Lockheed Martin was invoiced monthly from 2011 when Plaintiff, started working for BEI PSSC as Senior Contract Administrator for this cost plus fixed fee contract.

b. Contract No. 4100885816, for SBIRS Satellites GEO 5 & 6, effective years 2014 to 2018 with generally monthly invoice with cost basis invoicing; BEI PSSC number 1945. Plaintiff was contracts person for this cost plus fixed fee contract.

c. Contract No. 4101274481, primary years of operation were 2014-March 2017 for SBIRS Satellites GEO 5 & 6. BEI PSSC, Inc. tracking number is 1947. Contract types were fixed price for build and Fixed Price Level of Effort (FPLOE) for testing and integration onto Lockheed Martin Corporation drives for BEI PSSC, Inc. encoder. FPLOE had monthly invoices from 2014 to 3-2017.

d. At least three (for years 2019, 2018, and 2017) Northup Grumman contracts for AN/AAQ-37 Distributed Aperture System (DAS) for the F-35 Fight Aircraft with BEI PSSC, Inc, microscanner systems as subcomponent. Estimated 1,000 BEI PSSC, Inc, micro scanner systems were built per year.

e. General Dynamics Land Systems Division awarded contract starting in May 2018 and amendments for GGC40 encoder for M1A2 tank with total contract amount estimated to be over $5.5 million with 660+

units.

17. Plaintiff sent numerous emails on 2007 BEI PSSC handbook not complying with the minimal requirements of FAR 52.203-13 Contractors Code of Business Ethics and Conduct.  Dave Smith, signed Certification on May 29, 2014 asserting compliance with FAR 52.203-13 (c) and FAR 52.203-13 (b) on Lockheed Martin Supplier Code of Business Ethics and Conduct. Mr. Smith completed the form by himself as Business Finance Manager. Mr. Smith addressed the email to Plaintiff, and CC: Matt Jones (Controller and his manager and direct report to President) and Garry Rowe (HR Manager with responsibility for 2007 Employee Handbook and direct report to BEI PSSC President). Mr. Smith stated "I have reviewed what we have in place and do not have any problem signing this form. BEI is conscientious about ethics and our procedures are adequate." In response, Plaintiff wrote 15:20 email that stated the last amendment increases contract funding above $5,000,000 and thus FAR 52.203-13 will be applicable. Also, Plaintiff sent email at 15:04 starting with "Not to be disrespectfully or contrary,..". The Plaintiff 15:20 email outlined 8 areas of general compliance and 6 areas of non-compliance with additional  non-compliance of no business ethics training since Plaintiff employment on 3/12/2011. Also, Plaintiff outlined from FAR 52.203-13 (c) 4 areas of compliance using 14 point bold red type and 11 areas requiring compliance. The email was ignored. Also, email included full Lockheed Martin Terms and Conditions, BEI PSSC Handbook 2007 July 02 PDF version and LE Code of Ethics and business conduct along with Huntington Code of Ethics since both used BEI PSSC as subcontractor. Plaintiff wrote in email that "It is your decision since you sign the certs." The email was more passive since Mr. Smith was a Marine  in Viet Nam with certain swagger and not liking challenges.

a. On May 31, 2018, Plaintiff emailed Matt Jones and Garry Rowe that Contractor Code of Business Ethics and Conduct per 52.203-13 is applicable under NG (Northrup Grumman Contract 5/17/2018. Attached was Plaintiff's email asking about who in BEI PSSC would comply with  Honeywell Supplier Code of Business Conduct. No reply from Plaintiff's manager Matt Jones or Garry Rowe.

b. In fall of 2018, Garry Rowe provided a certification stating compliance on Sikorsky form that BEI PSSC

complies with 52.203-13. Garry Rowe told BEI PCCS Sales Adminstrative Assistant, upon delivering the

signed certification that Plaintiff and I disagree about the compliance.

**D. Disclosures Top 5 Executive Compensation Disclosures**

18. Defendant  has mixed disclosure for top 5 executive compensation. In first quarter of 2018,

defendant disclosed for first time, top 5 executives at its Maumelle, AR offices. But ignored disclosing

after acquisition by J.D. Lehman & Company on  May 4, 2017 (based on press releases)

to first quarter of 2018, close to one year.  From 7/30/2015 to May 4, 2017, Custom Sensors &

Technologies, Inc. (CST) did  not itself publicly disclose its top 5 executive compensation. CTS  was

owned by PAI Partners (35%) , Carlyle Group (35%) and Schneider Electric (30%) (French company under

European Union disclosure rules for top executives). PAI was approximate 35% owner who disclosed no

executive compensation since it was European private equity form . Schneider  Electric was 30% owner

who annually disclosed at least its top 5 executive compensation for annual years

2015, 2016 and 2017. Carlyle in annual SEC disclosures, disclosed it to 5 executive compensation 2015,

2016, and 2017. One of years 2011, 2012, 2013, 2014, Schneider Electric only disclosed top three

executive compensation. Those disclosures can be confirmed by reviewing public disclosure. Analysis is

required to determine the impact of non-disclosurers for time period of 2011 to first quarter of 2018.

Review of Defendant award summary of 1/3/2018 for contract N0010417PEX15 FOR $1,196,000;

Defendant declared that no reporting of executive compensation was required under Section 6202 of

P.L. 110-252. Since this award was for over 150 units, Plaintiff estimates that contract had 8 to 12

invoices for production at estimated at 10 per month for total estimated 9 to 13 false claims times

$21,916 for total maximum FCA violation of 13 times $21,916 = $284,908.

a. DLA Contract SPRAL1-17-C-0015, 5/15/2017, $199,826.

b. DLA contracts 7/31/2017 $125,290; 7/18/2017 $230,919

c. N00104-17-P-XA27, 12/2/2016, $17,023; 8 federal  contracts between $31,824 and $62,060 with

dates of 11/14/2016 to 4/18/2017. Claims maybe verified by reviewing all invoice submitted for

payment by Defendant.

**E. Representation per FAR52.204-7 (Jul 2013) in System for Award Management: Disclosure of Greenhouse Gas Emissions and Reduction Goal**

19. The 54 pages for **System for Award Management (SAM)** on page 15 (t) (2) representations did not reply to disclosure of greenhouse gas or if immediate or highest-level owner discloses. Both clauses with "does" or "does not" were left blank for both. Matthew Jones attested to accuracy of the representations of February 13, 2018 in SAM. The same representation was left blank for all 4 blocks on page 15 of 53 for SAM Feb, 5, 2019 Matthew Jones attestation.

20. BEI PSSC received more than $7.5 million in Federal Contract Awards on direct basis from DOD or NASA, FAA, or subcontract awards using Federal Contract Awards of the estimated $30m+ for Calendar year 2018 and 2017. Estimated less than $75,000 was direct commercial sales of MT40 encoder for industrial machine usage.

21. Ashley Olson, Manager EH&S/Trade Compliance, BEI PSSC responsible person for environmental compliance (E in EH&S or Environment, Health & safety), was notified in February 15, 2018 email from Plaintiff that there is no exemption in clause for small generator for "Public Disclosure of Greenhouse Gas Emissions." The full DFARS Clause 52,223-22, Public Disclosure of Greenhouse Gas Emissions – Representation was included in text of email. Plaintiff was suggested adding two sentences to BEI PSSC web site. Again, no compliance to the best of Plaintiff's knowledge and belief along with printing of all BEI PSSC web pages during first part of February 2019.

22. With Plaintiff February 15, 2018 email, Matthew Jones had an affirmative obligation to disclose as update after his February 13, 2018 SAM attestation which Matthew Jones did not update as required per SAM format update.

**F. Representation: "Is the immediate owner owned or controlled by another entity?" in SAM**

**for 2018 and 2019 was marked No which is incorrect since J.F. Lehman & Company controls**

**BEI PSSC, Inc.**

23. J.F. Lehman & Company press release of May 04, 2017 states that an investment affiliate has

acquired PSSC Holding Co. and its wholly owned subsidiary, BEI Precision Systems & Space Company,

Inc.

24. Below is copy and paste of clause on page 14.

(p) Ownership or Control of Offeror. (Applies in all solicitations when there is a requirement to

be registered in SAM or a

requirement to have a DUNS Number in the solicitation.

(1) The Offeror represents that it [X] has or [ ] does not have an immediate owner. If the Offeror

has more than one

immediate owner (such as a joint venture), then the Offeror shall respond to paragraph (c) and if

applicable, paragraph (d) of this

provision for each participant in the joint venture.*

(2) If the Offeror indicates "has"" in paragraph (b) of this provision, enter the following

information:

Immediate owner CAGE code:7KQM6

Immediate owner legal name:PSSC HOLDING CO.

(Do not use a "doing business as" name)

Is the immediate owner owned or controlled by another entity?

[ ] Yes [X] No
(3) If the Offeror indicates "yes" in paragraph (p)(2) of this provision, indicating that the
immediate owner is owned

or controlled by another entity, then enter the following information:

Highest-level owner CAGE code: _____

Highest-level owner legal name:Offeror asserts international ownership. They must provide the owner's NCAGE

Code within 90 days of registration.

(Do not use a "doing business as" name)

*Currently, only one Immediate or Highest-Level Owner may be identified by a CAGE Code. If the offeror has more than one (such as a joint venture) at either level of ownership, they must select only one to report.

25. J. F. Lehman & Company has supervised BEI PSSC, Inc. since it has initial investment of approximately $80 million (approximate $40 million as borrow funds of some sort). One of J.F. Lehman's personnel, David Ashcraft spends few days per month for the last few months at BEI PSSC, Arkansas. Additionally, regular board meetings are conducted in New York City. To best of plaintiff's memory, a board meeting on January 14 or 15 or 16, 2019 approved the 2019 budget that resulted in Plaintiff's termination on January 31, 2019. Did J. F. Lehman & Company Board meeting discuss the lack of future contracts that was basis to terminate Plaintiff per Vice President Finance, Kristin Gawlik, and 11 others on January 31, 2019?

26. Two misrepresentations in 2018 and 2019 should be assessed as False Claims violations maximum of $21,916 since repeat violations is after November 2, 2015. Additionally, an assessment should be made for each contract award using 2018 and 2019 SAM representations and certifications. A review of www.usaspending.gov/transparency/Pages;AwardSummary.aspx will list applicable direct awarded contracts for 2018 & 2019. Additionally, Prime Contractors have reviewed and replied on similar certifications in yearly certification to each contractor. Plaintiff has reviewed certifications in Sales Department folder in I Drive in BEI PSSC server but has no copies.

27. In statement of 5.16.2917, Daily Journal; "Barbara Linney served as the lead Miller & Chevailer lawyer on client J.F. Lehman & Company's acquisition of PSSC Holding Co. and its wholly owned

subsidiary, BEI Precision Systems & Space Company, Inc." Additionally, J.F. Lehman & Company directed

BEI Precision Systems & Space Company, Inc. engage Barbara Linney as export compliance counsel.

28. Verbally Plaintiff was told by President Daniel Schrader in May or June 2017 after New York City

meeting with J.F. Lehman Company that BEI PSSC, Inc. could not apply for small business status per J.F.

Lehman & Company even if BEI PSSC, Inc.  employees are in 200 to 250 range which would qualify as

small business under Small Business Administration guidance.

### G. No Disclosure to Defense Security Agency that Top Secret DD254 terminated on

### 6/30/2017

29. `Lockheed Martin Corporation Subcontract 8100002623 ended on 6/30/2017 and was only contract

that BEI PSSC Inc. had with top secret DD254 authorized.

30. in 2018, Lockheed Martin Corporation added secret DD254 to 1951 Time and Material Contract,

4101462500.

31. Also, North Grumman for Lot 12 (February to April 2018) for AN/AAQ-37 Distributed Aperture

System (DAS) for the F-35 Fight Aircraft /BEI PSSC micro scanner removed secret DD 254 from yearly

contract since BEI PSSC, Inc. had not been provided classified documents. The removal was by bi lateral

agreed contract amendment that was signed by both parties.

### H. The Accelerometer label that has installation orientation for P63A label that did

### not pass rub test; thus hydraulic fluid could remove the label safety aspect

32. In 2017 BEI Precision Systems & Space Company, Inc. was required to do P63A first article during 5 to

9/2017 before the award of Sikorsky Multi-Year IX contract award in September to October 2017. BEI

PCCS, Inc. discovered the defective labels during the first article review and build. The label and lettering

would not stand up to contract required rub test. The rub test uses fluid similar to hydraulic fluid that

removed the required letters  on the label.  The label did not meet military requirements but was

obtained from local stationary supplier. The label has orientation arrow and + that is used for correct

orientation installation on Blackhawk UH-60 helicopter for US Army and US Navy Seahawks. Also, the

same P63A is used on Marines and Navy CH53. This is Army classified critical item that is flight assist

component.

33. Each P63A is shipped with Certificate of Conformance (COC) stating that each accelerometer

complies with all Sikorsky specification requirements. The COC is included as part of invoice/shipping

documents.

34. Based on best knowledge of Plaintiff, in third or fourth quarter of 2017 BEI PSSC started using rub

resistant labels. Also, BEI PSSC did notify Defense Logistic Aviation, Richmond, VA of changes for 3

multi-year contracts for UH60, UHueys and B1 bomber.

35. The accelerometer production was moved from a leased building 500 to 1,000 feet to current

building at 1100 Murphy Drive, Maumelle, AR 72113 without the performance of first article test,

contract requirement. The move was done by January 2018. Also, BEI PSSC did not notifying the Defense
Logistics

Agency or Prime contractors to include Bell and Sikorsky of the change in manufacturing location. The

shipping and building address remained the same. Also, in 2009 to 2010, the move from 1100 Murphy

Drive, Maumelle, AR 72113 to CID, abutting  business with office and 3 to 4 separate buildings, was

accomplished without notice to Defense Logistics Agency or prime contractors:  Sikorsky, Bell, Lockheed

Martin, Rockwell Collins, etc. Plaintiff has personal knowledge of reviewing the renewals and notice of

not renewing the lease at end term due to CID needing the space for cabinet shop.


**J. Plaintiff was not engage/or worked as an attorney for BEI PSSC Inc.**

36. On March 21, 2011, Plaintiff was hired by BEI PSSC Inc. as Contracts Administrator Senior

and laid off on January 31, 2019 with same title of Contracts Administrator Senior. See Defendant's

Confidential Waiver and Release of Claims Agreement page 9 of 12, bottom 1/3 of page.

37. Plaintiff did not label or assert that document(s) prepared for BEI PSSC Inc. were attorney client privileged or work product privileged.

38. Defendant did not pay or offer to pay to Plaintiff yearly bar fees or fees for required continuing education; unlike his prior two corporate employers Honeywell Corporation and Harsco Corporation.

39. Plaintiff did not display attorney admission certificates in his BIE PSSC office.

40. Plaintiff did not hold himself as an attorney to BEI PSSC Inc. or its employees or agents.

41. Plaintiff made it clear to Lockheed Martin Ft. Worth attorney employee that he was not representing BEI PSSC Inc. Lockheed Martin Ft. Worth attorney employee proceeded to state that Florida Bar required her to tell us (Linda Meisenbach, Specialist Contracts Senior, and myself) that we could have attorney representation present. I stated that we were fine without representation to negotiate final terms and condition for P80 Accelerometer subcontract for F-16 fighter aircraft. Linda had prepared the exceptions and negotiated all except handful or less of open clauses.

42. All business cards did not contain counsel or attorney. Even the JD initials were not used. On business development card, Plaintiff did use the title Program Strategist with the name, JERRY DODD MBA, CPA.

43. In December 2018, Steven Parker, Senior Director of Performance Excellence, hired last of November 2018, asked if Plaintiff was an attorney. Steven was asking about terminating copier contract since two copiers were 15 to 20 feet apart. Plaintiff replied that Plaintiff is not an attorney for BEI PSSC Inc. but I am
good friends with Data Max sale representative. Plaintiff offered to talk to Mr. Dury, but Steven never followed up. The issue is Data Max would take the copier back, but Data Max requires all payments. Additionally, I never reviewed at time of contracting the Data Max prepared contract.

**K. Misstatements in Certification amount to Fraudulent Statements**

44. On 3/14/2018, David Dam as VP of Programs asserted the VMS3 encoder Unpublished Catalog or Price List "State the prices at which sales are currently, or were last, made to a significant number of buyers constituting the general public." No sales of VMS 3 encocder were made to other than Honeywell for towed M777 155mm Ultralightweight Field Howitzer. Proposal/Contract was obtained based on false statement, VMS 3 encoders estimated to be 40 to 150 units from memory of Plaintiff.

45. Annual Certification have been checked for error in negligent trending to fraudulent manner since annual Harris Supplier Certification, dated 7/13/2017  states that company employee total is 0 (zero) on page 2 of 17. On page 9 of 17 box was checked stating that suppliers internal business Systems complies with all of DFARS 252.242-7005 when supplier did not have earned Value Management Systems or Purchasing  Systems had not been reviewed or approved by Defense Contract Management Agency. Under Responsible Supplier on page 9 of 17, Supplier asserted that business ethics were consistent with or similar to the Harris Corporation Policies. Both persons filling out the Annual Supplier Certification and  David Dam stated to Plaintiff that they had not received  ethics training since being employed at BEI PSSC Inc. Plaintiff states this is typical for annual certifications and all should be reviewed for false statements.  On basis of this certification, estimated 12 monthly invoices were submitted to Harris Corporation for the year after 7/13/2017 to 7/13/2018.

46. Defendants Human Resources Director, Garry Rowe, did not change the Employee handbook in 2015, 2016, 2017 or 2018 to Inform Employees of Whistleblower Rights under DFARS Contract Clause 252.203-7002.  Plaintiff informed, email 1/26/2015, Garry Rowe of change without response from Garry and not change in employee handbook until 2019. All invoices from DOD Contracts should be subject to False Claims Act penalties applicable from time frame of 2015 to 2018. A review of DOD contract awards would be reasonable estimate until actual records of the Defendant are reviewed. Generally, at least there would be one invoice per month.

47. Defendant has asserted data rights were developed exclusively at private expense although Defendant does not have data to support its assertion of developed exclusively at private

expense for VMS 3, VMS 2, VIIRS, CRIS, SBIRS, and SPC 35. Part of the development was done under

subcontract for prime DOD or US Government Contract.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff/Relators pray for judgement against Defendants as follows:

1. That Defendants cease and desist from violating 31 U.S.C Sections 3729-33;

2. That the Court enter judgment against Defendants in an amount equal to three times amount of damages the United States has sustained as a result of Defendants' actions as well as a civil penalties against each Defendant of $21,916 to $11,000 depending on dates for each violation of 31 U.S.C. Section 3729.

3. That the Plaintiff/Relators be awarded all costs and expenses of this action, including attorney's fees; and

4. That the United States and Plaintiff/Relators receive all such other relief as the court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff hereby demands trial by jury.

Dated: February 2-0 , 2019                    Respectfully submitted,

Jerry L. Dodd */Plaintiff Pro Se
700 Kirkpatrick Road
Malvern, AR 72104
Arkansas Bar #: 2001261
Telephone: (501) 467-1265
Fax: (501) 332-7173
Email: jerryleedodd@yahoo.com

*Application to Practice in UNITED STATES DISTRICT COURTFOR THE EASTERN DISTRICT OF ARKANSAS is being filed concurrently with this filing.

Attachment A, Confidential Waiver and Release of Claims Agreement, 12 pages, dated 1/31/2019

Attachment B, David Rattner, J.F. Lehman & Company,  2/4/2019 email

## CONFIDENTIAL WAIVER AND RELEASE
## OF CLAIMS AGREEMENT

THIS CONFIDENTIAL WAIVER AND RELEASE OF CLAIMS AGREEMENT ("Agreement") is made and entered into by and between Jerry L. Dodd and BEI Precision Systems and Space Company, Inc., its past and present shareholders, directors, board members, executives, managers, supervisors, employees, agents, and affiliated entities (collectively referred to as "BEI").

### Recitals

Dodd's employment with BEI ended on the 31st day of January, 2019 (the "Separation Date"). BEI desires to provide Dodd with a severance package in recognition of his work at BEI and in exchange for a general release of any and all claims as set forth herein.

NOW, THEREFORE, in consideration of the premises and mutual promises herein contained, Dodd and BEI agree as follows:

1.    No Admission of Liability

This Agreement shall not in any way be construed as an admission by Dodd or BEI that either party has acted wrongfully with respect to the other or any other person, and the parties agree that this document will not be referred to or admitted into evidence in any legal or administrative proceeding, except to the extent necessary to enforce the terms of this Agreement.

2.    No Reemployment

Dodd understands and agrees that he will not apply for employment with BEI in the future and will not be reemployed by BEI at any time in the future.

3.    No Other Claims

Dodd represents that he has not filed any complaints or charges against BEI with any governmental agency, or any lawsuit in any court.

4.    Payments and Consideration

Under the terms of this Agreement, following the expiration of the seven (7) day revocation period referenced in Paragraph 10(g), and assuming no revocation, Dodd will be entitled to the following:

J.L.D.

(a)    Payment of the gross amount of $29,575.56, minus the applicable payroll deductions required by law, payable in lump sum;

(b)    BEI not opposing any claim for unemployment benefits, although it reserves the right to provide the Department of Workforce Services with any requested information or documentation.

BEI's payment to Dodd and the non-opposition to any unemployment claim are in consideration of Dodd's execution and delivery of this Agreement, and his faithful performance of his obligations under this Agreement. If Dodd fails to fully execute and deliver this Agreement to BEI within forty-six (46) calendar days from receipt of this Agreement, he will not be entitled to the consideration listed in this Agreement.

5.    <u>Benefits</u>

(a)    Any benefits due Dodd on the Separation Date will be administered in accordance with applicable policies and procedures. Except as specifically described herein, Dodd shall not be entitled to any other benefits or compensation (including the accrual of Personal Time Off), or to any incentive pay, bonus or other similar compensation after the Separation Date. Dodd's termination date for pension plan or other retirement plan purposes shall be deemed to be the Separation Date, unless otherwise required by the relevant plan or law.

(b)    To the extent applicable, Dodd will be responsible for any other insurance coverage he has purchased in the past through third-party insurance companies, including coverages paid through pre-tax deductions.

6.    <u>No Obligation</u>

Dodd and BEI acknowledge and understand that the consideration set forth in Paragraphs 4(a) and 4(b) are not required by the policies, practices or procedures of BEI.

7.    <u>Cessation of Authority and Return of Property</u>

Dodd acknowledges that effective the Separation Date, he will no longer be authorized to incur any expenses, obligations or liabilities on behalf of BEI. Dodd shall deliver to BEI all keys, handbooks, training manuals, minutes, records, phones, computers, computer discs, flash drives, portable computer drives, passwords, spreadsheets, computer files, payroll information, and any other property belonging to BEI on the Separation Date.

J.L.D.

8.    Complete Settlement

Dodd accepts the consideration set forth in Paragraph 4 in full and complete settlement of any and all claims he has or might have against BEI, including, but not limited to, claims of breach of contract and/or breach of any covenant; claims for wrongful or constructive discharge; claims of tortious conduct, including, but not limited to, interference with contract, defamation and intentional infliction of emotional distress; claims of violation of civil rights or discrimination (including harassment and retaliation); claims for unequal or discriminatory pay or treatment; claims for failure to pay proper wages or overtime; claims for failure to accommodate and failure to grant leave; claims for whistle-blowing; claims for attorney's fees; and any and all claims related or in any way incidental to Dodd's employment with BEI and/or the separation of his employment.

By accepting the payment and consideration listed in Paragraph 4, it is Dodd's express desire to release and waive each and every claim for injuries, damages, and consequences, known and unknown, developed or which might develop in the future, resulting from any practices, acts, or omissions of BEI prior to the date of this Agreement.

9.    Restrictive Covenants

This Agreement is confidential.  The parties represent and agree that they will keep the terms, amount and fact of this Agreement completely confidential, and that they will not disclose any information concerning this Agreement to anyone except as permitted below.  Dodd may disclose such information to his spouse, lawyers, and accountants, any state or federal governmental agency or tax authority, and, if required to do so, by subpoena or court order.  BEI may disclose such information to its lawyers, accountants, individuals within BEI on a need-to-know basis, any state or federal governmental agency or tax authority, and, if required to do so, by subpoena or court order.  Prior to any approved disclosure, discussion, or description of the existence or terms of this Agreement, the parties shall inform the other person or entity that he, she or it is bound by this confidentiality limitation.

Dodd agrees that he will at no time take any action or make any statement that could discredit or disparage the reputation of BEI, its shareholders, directors, board members, officers, executives, managers, employees, agents, representatives, affiliates, products or services.  BEI agrees that its board members and management will not take any action or make any statement that could discredit or disparage the personal or professional reputation of Dodd.  However, neither party is prohibited from testifying truthfully in any type of administrative or other proceeding.

Any request for an employment reference should be directed to Garry Rowe, Director Human Resources.

Page 3 of 12 Attachment A                    _____
                                                J.L.D.

10. <u>Complete Release</u>

(a)     By accepting the payment and consideration listed in Paragraph 4, Dodd hereby releases and forever discharges BEI from any and all complaints, claims, obligations, injuries, demands, damages, causes of action, and expenses (including attorneys' fees and costs actually incurred) of any nature whatsoever, known or unknown, including, but not limited to, the following: Claims for breach of contract, wrongful discharge or constructive discharge; claims for failure to promote or failure to hire; claims for failure to grant leave or to accommodate; claims for lost compensation, wages, benefits, bonuses, and emotional distress; claims of tortious conduct, including, but not limited to, defamation, interference with contract and intentional infliction of emotional distress; claims for detrimental reliance; claims for any form of discrimination, harassment or retaliation; claims for unequal or discriminatory pay or treatment; claims for failure to pay proper wages or overtime; claims for whistle-blowing; claims arising out of an alleged violation of any employment agreement, express or implied, any covenant of good faith and fair dealing, express or implied; and any claims arising under federal, state or other governmental statute, regulation, law, or ordinance, including, without limitation: (1) Title VII of the Civil Rights Act of 1964; (2) the Arkansas Civil Rights Act; (3) Executive Order 11141; (4) § 503 of the Rehabilitation Act; (5) the Americans with Disabilities Act; (6) 42 U.S.C. § 1981; (7) the Genetic Information Nondisclosure Act; (8) the Age Discrimination in Employment Act of 1967 and the Older Workers Benefits Protection Act; (9) the Family and Medical Leave Act; (10) the National Labor Relations Act; (11) the Fair Labor Standards Act and the Arkansas Minimum Wage Act; (12) the Equal Pay Act; and (13) the Employee Retirement Income Security Act ("ERISA"), (collectively referred to as the "Claim" or "Claims").

As consideration for the severance payment and other benefits received under this Agreement, Dodd further agrees that he will not file any lawsuit against BEI and the Released Parties (or against any of them) based on the Claims released in this Agreement. Dodd also releases any right to receive any individual remedies or damages in (a) any administrative proceeding or (b) any court action based on or concerning the Claims released in this Agreement. However, nothing in this Agreement is intended to interfere with Dodd's rights under applicable law to file or otherwise institute a charge of discrimination, to participate in a proceeding with any appropriate federal or state government agency enforcing discrimination laws, or to cooperate with any such agency in its investigation, none of which shall constitute a breach of the non-disparagement or confidentiality clauses of this Agreement.

(b)     Dodd acknowledges that he has had a reasonable period of time (up to and including forty-five (45) days) to review and consider this Agreement;

J.L.D.

(c)     Dodd acknowledges that he has carefully read and fully understands all of the provisions of this Agreement;

(d)     Dodd acknowledges that he is, through this Agreement, releasing BEI and the Released Parties (or any of them) from any and all claims he may have based on any event, occurrence or claim which was raised or could be raised prior to the effective date of this Agreement;

(e)     Dodd acknowledges that he knowingly and voluntarily agrees to all the terms set forth in this Agreement;

(f)     Dodd acknowledges that he knowingly and voluntarily intends to be legally bound by this Agreement;

(g)     Dodd understands that he may revoke this Agreement within seven (7) calendar days after signing it by delivering written notice of revocation to Garry Rowe or Charlotte Stowe, by mail, e-mail, or fax within the seven-day period, and that this Agreement is not effective or enforceable until the seven-day revocation period has expired.  The seven-day revocation period shall commence on the date and time the Agreement is executed by Dodd.

(h)     Dodd acknowledges that he was advised and hereby is advised in writing to consider the terms of this Agreement carefully and consult with an attorney of his choice prior to executing this Agreement; and

(i)     Dodd acknowledges that he understands that rights or claims under the employment laws that may arise after the date this Agreement is executed are not waived.

11.     <u>No Representations</u>

Dodd represents and acknowledges that in executing this Agreement he does not rely and has not relied upon any representation or statement not included in this Agreement that was made by BEI or by any of BEI's agents or representatives with regard to the subject matter, terms, basis or effect of this Agreement.

12.     <u>Successors</u>

This Agreement shall be binding upon Dodd and upon his respective heirs, administrators, representatives, executors, successors and assigns, and shall inure to the benefit of BEI's heirs, representatives, executors, administrators, successors and assigns.

J.L.D.

13.   <u>Applicable Law</u>

This Agreement is made and entered into in the State of Arkansas, and shall in all respects be interpreted, enforced and governed under the substantive laws of the State of Arkansas, without regard to choice of law.  The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the parties.

14.   <u>Severability</u>

The provisions of this Agreement are severable, and if any part of the Agreement is found to be unenforceable, the other parts shall remain fully valid and enforceable.  This Agreement shall survive the termination of any arrangements contained herein.

15.   <u>Entire Agreement</u>

This Agreement sets forth the entire agreement between the parties, and fully supersedes any and all prior agreements or understandings between the parties pertaining to its subject matter.  No statements, promises or representations have been made by any party to the other, or are relied upon, and no consideration has been or is offered, promised, or expected, other than that already received or set forth in this Agreement.  Any modifications to this Agreement must be in a writing signed by both parties.

*[Signature Page Follows]*

J.L.D.

Dodd represents and agrees that he has carefully read and fully and completely understands all of the terms and provisions of this Agreement, that she does not have any questions concerning any of the terms and provisions of this Agreement, and that he is voluntarily entering into this Agreement of his own free will.

*__**Dodd shall have up to and including forty-five (45) days from the date of receipt of this Agreement to consider this Agreement and forty-six (46) days from the date of receipt to execute this Agreement (with each page initialed) and return it to Garry Rowe or Charlotte Stowe.__*

_____
Jerry L. Dodd

Date: _____

Time: _____ a.m./p.m.


BEI Precision Systems and Space Co., Inc.

By: _____

Title: _____

Date: _____

## EXHIBIT A

The following information is provided to you in accordance with the Age Discrimination and Employment Act ("ADEA") and the Older Workers' Benefit Protection Act because the severance payments offered to you have been established in connection with an employment termination program offered to certain employees of the Company (hereinafter referred to as the "**Program**").

The employees covered by the Program include all employees whose employment was terminated in the reduction in force on January 31, 2019.

There is one group of individuals covered by the Program.  This group is referred to as a "**Decisional Unit**."

A.   The Decisional Unit consists of the Company's facility in Maumelle, Arkansas.  All employees in your Decisional Unit are eligible for the Program.

B.   The selection criteria for the involuntary terminations in your Decisional Unit included seniority, performance and efficiency.

C.   All persons who are being offered consideration for a waiver of rights under the ADEA must sign the agreement and return it to the Human Resources office within 46 days after receiving the agreement.  Once the signed waiver is returned to the Human Resources office, the employee has 7 days to revoke the waiver agreement.

D.   The following is a list of the job titles and ages of the employees in your Decisional Unit who were and were not selected for termination under the Program:

| Job Title | Age | No. Selected | No. Not Selected |
|---|---|---|---|
| Administrative Assistant | 37 | 0 | 1 |
| Analyst Financial | 37 | 0 | 1 |
| Analyst Financial | 40 | 0 | 1 |
| Analyst Information Technology & Security Sup | 38 | 0 | 1 |
| Analyst Information Technology/Security | 43 | 0 | 1 |
| Analyst Information Technology/Security | 38 | 0 | 1 |
| Assembler | 54 | 0 | 1 |
| Assembler | 43 | 0 | 1 |
| Assembler | 36 | 0 | 1 |
| Assembler | 55 | 0 | 1 |

J.L.D.

| Assembler | 65 | 0 | 1 |
|---|---|---|---|
| Assembler | 46 | 0 | 1 |
| Assembler | 22 | 0 | 1 |
| Assembler | 62 | 0 | 1 |
| Assembler | 55 | 0 | 1 |
| Assembler | 47 | 0 | 1 |
| Assembler | 36 | 0 | 1 |
| Assembler Sr | 57 | 0 | 1 |
| Assembler Sr | 57 | 1 | 0 |
| Assembler Sr | 55 | 0 | 1 |
| Assembler Sr | 62 | 0 | 1 |
| Assembler Sr | 45 | 0 | 1 |
| Assembler Sr | 64 | 0 | 1 |
| Assembler Sr | 66 | 0 | 1 |
| Assembler Sr | 57 | 0 | 1 |
| Assembler Sr | 66 | 0 | 1 |
| Assembler Sr | 36 | 0 | 1 |
| Assembler Sr | 50 | 0 | 1 |
| Assembler Staff | 60 | 0 | 1 |
| Assembler Staff | 41 | 0 | 1 |
| Assembler Staff | 63 | 0 | 1 |
| Buyer | 47 | 0 | 1 |
| Buyer | 64 | 0 | 1 |
| Buyer | 64 | 1 | 0 |
| Buyer | 53 | 0 | 1 |
| Chief Engineer | 51 | 0 | 1 |
| Chief Information Officer | 42 | 0 | 1 |
| Contracts Administrator Senior | 65 | 1 | 0 |
| Controller Functional | 58 | 0 | 1 |
| Coordinator Accounting | 37 | 0 | 1 |
| Coordinator Accounting Senior | 61 | 0 | 1 |
| Coordinator Government Property Custodian | 53 | 0 | 1 |
| Coordinator Metrology | 39 | 0 | 1 |
| Coordinator Metrology | 56 | 0 | 1 |
| Coordinator QA Receiving & Inspection | 62 | 0 | 1 |
| Director Business Development | 50 | 0 | 1 |
| Director Engineering | 56 | 0 | 1 |
| Director Human Resources | 63 | 0 | 1 |
| Director of Operations | 61 | 0 | 1 |
| Engineer Continuous Improvement | 38 | 0 | 1 |
| Engineer Disk Product Manufacturing | 44 | 0 | 1 |

Page 9 of 12 Attachment A

J.L.D.

| | | | |
|---|---|---|---|
| Engineer Electrical | 38 | 0 | 1 |
| Engineer Electrical | 39 | 0 | 1 |
| Engineer Electrical Senior | 56 | 0 | 1 |
| Engineer Electrical Senior | 46 | 0 | 1 |
| Engineer Electrical Senior | 32 | 0 | 1 |
| Engineer Field Sales, Senior | 58 | 0 | 1 |
| Engineer Manufacturing | 39 | 0 | 1 |
| Engineer Manufacturing | 63 | 1 | 0 |
| Engineer Manufacturing | 33 | 0 | 1 |
| Engineer Manufacturing | 44 | 0 | 1 |
| Engineer Mechanical | 30 | 0 | 1 |
| Engineer Mechanical | 30 | 0 | 1 |
| Engineer Mechanical Senior | 64 | 0 | 1 |
| Engineer Optical Senior | 32 | 0 | 1 |
| Engineer Quality | 57 | 0 | 1 |
| Engineer Quality | 50 | 1 | 0 |
| Engineer Quality | 32 | 1 | 0 |
| Engineer Quality, Senior | 59 | 0 | 1 |
| Engineer Quality, Senior | 56 | 0 | 1 |
| Engineer Quality, Senior | 55 | 0 | 1 |
| Engineer Reliability Senior | 39 | 0 | 1 |
| Engineer Test | 38 | 1 | 0 |
| Engineer Test Senior | 38 | 0 | 1 |
| Engineering Manufacturing Senior | 55 | 0 | 1 |
| Inspector Line | 45 | 0 | 1 |
| Inspector Line | 52 | 0 | 1 |
| Inspector Receiving | 73 | 1 | 0 |
| Inspector Receiving | 60 | 0 | 1 |
| Inspector Receiving | 50 | 0 | 1 |
| Inspector Receiving | 54 | 0 | 1 |
| Jr. Facilities Maint. Mechanic | 26 | 0 | 1 |
| Machine Operator | 32 | 0 | 1 |
| Machinist Journey-Level | 49 | 0 | 1 |
| Machinist Sr Direct | 38 | 0 | 1 |
| Machinist Sr Direct | 55 | 0 | 1 |
| Manager Documentation | 47 | 0 | 1 |
| Manager EH&S / Trade Compliance | 37 | 0 | 1 |
| Manager Electrical Engineering | 54 | 0 | 1 |
| Manager Manufacturing | 45 | 0 | 1 |
| Manager Materials | 55 | 0 | 1 |
| Manager Mechanical Engineering | 46 | 0 | 1 |

Page **10** of 12  Attachment A   J.L.D.

| | | | |
|---|---|---|---|
| Manager Optical Engineering | 46 | 0 | 1 |
| Manager Production Control | 56 | 0 | 1 |
| Manager Program | 66 | 0 | 1 |
| Manager Quality Inspection & Test | 64 | 0 | 1 |
| Manager Specialty Engineering | 55 | 0 | 1 |
| Material Handler | 37 | 0 | 1 |
| President/GM | 48 | 0 | 1 |
| Receptionist | 70 | 0 | 1 |
| Representative Human Resources | 37 | 0 | 1 |
| Representative Sales Support | 55 | 0 | 1 |
| Representative Sales Support | 58 | 0 | 1 |
| Scheduler | 60 | 1 | 0 |
| Senior Director Performance Excellence | 35 | 0 | 1 |
| Specialist Contracts | 55 | 0 | 1 |
| Specialist Contracts Senior | 59 | 0 | 1 |
| Specialist Documentation | 60 | 0 | 1 |
| Specialist Documentation | 58 | 0 | 1 |
| Specialist Manufacturing | 46 | 0 | 1 |
| Specialist Manufacturing | 47 | 0 | 1 |
| Specialist Manufacturing | 38 | 0 | 1 |
| Specialist Product | 59 | 0 | 1 |
| Specialist Production Control | 60 | 0 | 1 |
| Specialist Production Control | 53 | 0 | 1 |
| Specialist Production Planning | 56 | 0 | 1 |
| Specialist Program Manager | 33 | 0 | 1 |
| Specialist Program Manager | 71 | 1 | 0 |
| Specialist Subcontracting | 62 | 0 | 1 |
| Sr. Technician | 55 | 0 | 1 |
| Sr. Technician | 59 | 0 | 1 |
| Sr. Technician Engineering | 58 | 0 | 1 |
| Stock Clerk | 39 | 0 | 1 |
| Stock Clerk | 53 | 0 | 1 |
| Stock Clerk | 39 | 0 | 1 |
| Supervisor Accounting | 53 | 0 | 1 |
| Supervisor Final Test | 61 | 1 | 0 |
| Supervisor Human Resources | 56 | 0 | 1 |
| Supervisor Manufacturing | 44 | 0 | 1 |
| Supervisor Manufacturing | 46 | 0 | 1 |
| Supervisor Manufacturing | 43 | 0 | 1 |
| Supervisor QA Inspection | 62 | 0 | 1 |
| Supervisor Stockroom | 43 | 0 | 1 |

| | | | |
|---|---|---|---|
| Technician | 48 | 0 | 1 |
| Technician | 38 | 0 | 1 |
| Technician | 52 | 0 | 1 |
| Technician | 64 | 0 | 1 |
| Technician | 26 | 0 | 1 |
| Technician | 44 | 0 | 1 |
| Technician | 48 | 0 | 1 |
| Technician | 55 | 0 | 1 |
| Technician | 37 | 0 | 1 |
| Technician | 44 | 1 | 0 |
| Technician | 35 | 0 | 1 |
| Technician | 49 | 0 | 1 |
| Technician | 39 | 0 | 1 |
| Technician | 64 | 0 | 1 |
| Technician | 32 | 0 | 1 |
| Technician | 39 | 0 | 1 |
| Technician | 38 | 0 | 1 |
| Technician | 41 | 0 | 1 |
| Technician Engineering | 31 | 0 | 1 |
| Vice President - Program Management | 46 | 0 | 1 |
| Vice President Finance | 44 | 0 | 1 |
| Vice President of Business Development | 58 | 0 | 1 |
| | | | |

RE: Jerry Dodd Whistle blowing Complaint about Termination Document Requiring no Whistle Blowing

From: David Rattner (DLR@jflpartners.com)

To: jerryleedodd@yahoo.com

Date: Monday, February 4, 2019, 1:17 PM CST

We are reviewing and will get back to you. I do understand you did receive a copy of the release agreement which you left behind.

**From:** jerry dodd <jerryleedodd@yahoo.com>
**Sent:** Friday, February 1, 2019 4:15 PM
**To:** David Rattner <DLR@jflpartners.com>
**Subject:** Jerry Dodd Whistle blowing Complaint about Termination Document Requiring no Whistle Blowing

Dear David L. Rattner, Chief Compliance Officer, J.F. Lehman & Company

I returned your call, 212-634-1178, 12:11 PM, January 31, 2019, to my phone, 501-332-7173 after I had called earlier during your lunch.

I called to report the prohibiting of whistle blower complaints under the BEI PSSC Release of Claims Agreement. Prohibiting of whistle blower complaints to DOD IG under US Statutes and implementing FAR and DFARS are prohibited (you may have another opinion).

You commented that you have not reviewed the Release of Claims Agreement of BEI PSSC. During the phone call, I did not have a copy of the Release of Claims Agreement since it had been taken from my briefcase as company document (30 minutes or so after being given to me for review) along with non-company documents addressed to me personally.

It is my understanding, that J.F. Lehman & Company through intermediate companies owns BEI PSSC, Inc.

When will I receive a reply from my complaint?

Also, is J.F. Lehman & Company a member of Defense Industry Initiative (on ethics and compliance)?

Jerry Dodd

501-332-7173

m501-467-1265

This e-mail message is intended only for the use of the individual or entity to which it is addressed and may contain information that is confidential and exempt from disclosure. If you are not the intended recipient, please do not disseminate, distribute or copy this communication, by e-mail or otherwise. Instead, please delete and discard all copies of the e-mail.

Atch. B pg 1 of 1

JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

4:19-cv-132-KGB

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| UNITED STATES OF AMERICA, EX REL, (UNDER SEAL) | (UNDER SEAL) |

**(b)** County of Residence of First Listed Plaintiff  **USA**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  **PULASKI**
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
(UNDER SEAL)

Attorneys *(If Known)*
UNKNOWN

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1   U.S. Government
Plaintiff

☐ 3   Federal Question
*(U.S. Government Not a Party)*

☐ 2   U.S. Government
Defendant

☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☒ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | Protection Act |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 850 Securities/Commodities/ |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | Exchange |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | ☐ 890 Other Statutory Actions |
| | Medical Malpractice | | Leave Act | | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 895 Freedom of Information |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | ☐ 899 Administrative Procedure |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | Act/Review or Appeal of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | Agency Decision |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | State Statutes |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
Another District
*(specify)*

☐ 6 Multidistrict
Litigation -
Transfer

☐ 8 Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
QUI TAM 31 usc 3729 (a)
Brief description of cause:
QUI TAM  and False Claims Act

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE 2/20/2019

SIGNATURE OF ATTORNEY OF RECORD   *(signature)*   Applying, Admiral

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____